**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | | |
|---|---|---|
| **YRC INC.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case no. 12-CV-2179 SAC/KGS** |
| | ) | |
| **MAGLA PRODUCTS, L.L.C. d/b/a** | ) | |
| **MAGLA FINISHED GOODS** | ) | |
| **WAREHOUSE, MAGLA PRODUCTS, INC.,** | ) | |
| **MAGLA INTERNATIONAL, LLC,** | ) | |
| **MAGLA WORLDWIDE, LTD.,** | ) | |
| **ADS IN MOTION, INC., JORDAN GLATT,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**MEMORANDUM IN SUPPORT**
**OF PLAINTIFF YRC INC.'S MOTION TO REMAND**

Pursuant to D.Kan. Local Rule 7.6(a), plaintiff YRC Inc. ("YRC") respectfully submits this memorandum in support of its motion to remand.

**NATURE OF THE MATTER**

YRC is in the business of hauling freight. This case was originally filed by YRC in the District Court of Johnson County, Kansas on August 12, 2011 against four affiliated corporate defendants.[1] The original petition contained three counts—breach of contract, action on account, and quantum meruit—each of which arises out of the defendants' failure to pay for freight hauling services rendered by YRC. YRC claims approximately $275,000 in damages.

---

[1] One of the defendants, Ads in Motion, Inc., was incorrectly described in the original petition as being incorporated in New Jersey. In fact, there are two companies by that exact same name doing business in New Jersey, but the proper defendant is incorporated in Delaware. When YRC's counsel learned of his mistake, he promptly amended the petition. The first amended petition is identical to the original petition, except for that minor change to that one defendant's state of incorporation.

After discovering evidence that an officer of the corporate defendants, Jordan Glatt ("Glatt"), had been diverting corporate funds to family members during the relevant period, YRC added Glatt as a defendant on a piercing the corporate veil theory on February 3, 2012.[2] At the same time, YRC added an additional corporate defendant, Magla Worldwide, Ltd., plus several unnamed John Doe defendants, described in the Second Amended Petition as either corporate officers who may have transferred funds fraudulently or as Glatt family members who may have received funds that were fraudulently transferred. In addition to the original counts, the Second Amended Petition contains counts for piercing the corporate veil and for fraudulent transfer of funds in violation of Kansas' Fraudulent Transfer Act.

On March 26, Glatt filed a notice of removal ("Notice of Removal") with this Court, removing the case from the District Court of Johnson County, Kansas. YRC is filing its Motion to Remand, along with this supporting memorandum, to move this Court to remand the case back to state court.

## STATEMENT OF FACTS

1. The Notice of Removal contains a Consent to Removal of Action to Federal Court ("Consent") signed five times by Glatt himself, once each as president of the five corporate defendants. (See Document 1-1 in this Court's record of the case on PACER).

2. Two of those defendants—Magla Products, LLC and Magla International, LLC—were served the original petition on September 7, 2011. (**Exhibit A**, Affidavits of Service; also included in Document 8-1, State Court Records.)

---

[2] In the Second Amended Petition.

3. The other two original defendants—Ads in Motion, Inc and Magla Products, Inc.—were served a slightly amended petition on October 10, 2011 and November 3, 2011, respectively. (See **Exhibit B**, Affidavit of Service and Return of Service; also included in Document 8-1, State Court Records.)

4. The two named defendants who were added on February 3—Glatt and Magla Worldwide, Ltd.—were served the Second Amended Petition on February 24 and March 8, respectively. (See **Exhibit C**, Affidavit of Service (also included in Document 8-1, State Court Records) and Return of Service (also Document 13).)

5. Other than the Consent, the only other documents included with the Notice of Removal are:

a. a Declaration of Jordan Glatt, in which Glatt makes certain statements regarding his contacts with the state of Kansas (Document 1-1);

b. the Second Amended Petition (Document 1-2);

c. a Request and Service Instruction Form requesting that the state court issue a summons and petition for Magla Products, Inc. (Document 1-2);

d. a Request for Service requesting that the state court issue a Second Amended Petition and Summons for Jordan Glatt (Document 1-2);

e. a Return of Service executed by YRC's counsel certifying that he has served a copy of the Summons and the Amended Petition on Magla Products, Inc. (including a copy of the signed return receipt as an exhibit) (Document 1-2); and

f. an Affidavit of Service signed by a process server attesting to service on Jordan Glatt of a Summons, a Notice of Case Management Conference, and the Second Amended Petition. (Document 1-2).

6. This action contains no counts that are federal questions pursuant to 28 U.S.C. §1331. (See Document 1-2, Second Amended Petition).

7. For the purpose of determining diversity pursuant to 28 U.S.C. §1332, plaintiff YRC is a citizen of Kansas and Delaware because its principal place of business is in Kansas and it is incorporated in Delaware. (Document 1-2, Second Amended Petition, ¶1; Document 1, Notice of Removal, ¶11).

8. For the purpose of determining diversity pursuant to 28 U.S.C. §1332, defendant Ads in Motion, Inc. ("AIM") is a citizen of New Jersey and Delaware because its principal place of business is in New Jersey and it is incorporated in Delaware. (Document 1-2, Second Amended Petition, ¶6, which is undisputed; see also **Exhibit D**, the first 11 pages of AIM's 10-Q filing with the Securities Exchange Commission, filed April 15, 2011, showing on page 1 AIM's state of incorporation and principal place of business).

9. Although Glatt does not dispute that YRC and AIM are both citizens of the same state, Delaware, his Notice of Removal argues that AIM's citizenship should be ignored for the purpose of determining diversity on the alleged grounds that AIM was fraudulently joined. (Document 1, ¶17).

## QUESTIONS PRESENTED

The questions presented are (1) whether this Court has subject matter jurisdiction over this action, (2) whether the Notice of Removal and Consent are timely pursuant to

28 U.S.C. §1446(b), and (3) whether the Notice of Removal satisfies the procedural removal requirements set forth in 28 U.S.C. §1446(a).

## ARGUMENT

### 1. Legal Standard for Removal

Under federal law, there is a presumption against removal jurisdiction. Laughlin v. Kmart Corporation, 50 F.3d 871, 873 (10th Cir. 1995). Defendants invoking the federal court's jurisdiction bear the burden of establishing that the requirements for the exercise of diversity jurisdiction are present. Martin v. Franklin Capital Corp., 251 F.3d 1284, 1291 (10th Cir. 2001). "Federal courts must construe the federal removal statute strictly, and doubts concerning removability are to be resolved against removal and in favor of remanding cases to state court." J.W. Petroleum, Inc. v. Lange, 787 F.Supp. 975, 978 (D.Kan. 1992). The burden is on the party opposing a motion to remand to state court to show jurisdiction by a preponderance of evidence. Karnes v. Boeing Co., 335 F.3d 1189, 1194 (10th Cir. 2003).

### 2. Arguments

#### *a. The Court lacks subject matter jurisdiction over this action because no federal question is present and complete diversity does not exist between the parties.*

The Court lacks subject matter jurisdiction over this action because no federal question is present and complete diversity does not exist between the parties. The Notice of Removal claims that the Court has subject matter jurisdiction based on diversity of citizenship between the parties pursuant to 28 U.S.C. §1332. (Document 1, ¶2 and ¶9). Since its enactment, the U.S. Supreme Court has interpreted the diversity statute to require complete diversity of citizenship. Carden v. Arkoma Assoc., 494 U.S. 185, 187

(U.S. 1990). Complete diversity means that each defendant must be a citizen of a different state than each plaintiff. Owen Equipment & Erection Co. v. Kroger, 437 U.S. 365, 373 (U.S. 1978). For purposes of diversity, "a corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business." 28 U.S.C. §1332(c)(1). "A corporation has dual citizenship for diversity jurisdiction purposes. One is the state of incorporation and the other is that state where its principal place of business is located." Miller Production Co., v. Champlin Petroleum Co., 505 F.Supp. 46, 47 (W.D. Okla. 1980). Contrary to Glatt's assertion, diversity of citizenship is lacking in this case because plaintiff YRC and one of the defendants, AIM, are both incorporated in Delaware.

Glatt does not dispute that YRC and AIM are non-diverse parties. Instead, he claims that AIM was fraudulently joined to defeat diversity. (Document 1, ¶17). This is simply not true, and the Notice of Removal does not provide any evidence that it is true. Nor could it provide any evidence, because the reason YRC included AIM as a defendant in its original petition was that during the relevant period AIM was so intricately related to the other corporate defendants as to be virtually indistinguishable from them. In fact, one of the diverse defendants, Magla Products, LLC, completed a reverse merger with AIM by which AIM continued the business of Magla. A press release to that effect, attached hereto as **Exhibit E** (and included in the record as Exhibit C to YRC's Motion for Leave to File a Second Amended Petition, see Document 8-1, State Court Records), states:

> "Magla Products, LLC . . . today announced the successful completion of a reverse merger (the "Merger") with Ads in Motion, Inc. ("AIM"), a Company

> with no current operations. AIM, now headquartered in Magla's Morristown facility, will continue the business of Magla products as a wholly-owned subsidiary under the leadership of the current management team, headed by Chairman and Chief Executive Officer, Jordan Glatt. In completing the Merger, AIM issued approximately 13.45 million shares of its common stock to the holders of Magla common stock, principally Mr. Glatt. The merged company was quoted on the OTCBB market under the symbol 'ADSO,' beginning on February 8, 2011."

Magla and AIM, in other words, were holding themselves out publicly to be one and the same company—a "merged company"—operating at the same location and under the same management. One company is the wholly-owned subsidiary of the other. The interchangeability of Magla and AIM is further evidenced by AIM's April 15, 2011 10-Q filing with the Securities Exchange Commission:

> "Ads [AIM] completed a reverse acquisition through a share exchange with Magla whereby Ads acquired all of the issued and outstanding membership units of Magla in exchange for 13,455,700 shares of Ads common stock . . . which shares constituted approximately 97% of Ads issued and outstanding shares, as of and immediately after the consummation of the reverse acquisition. Magla became a wholly owned subsidiary of Ads. Even though Ads was the legal acquirer, Magla is treated as the accounting acquirer." See **Exhibit D**, p.11.

A very strong argument can therefore be made that AIM has successor liability for Magla's obligations. It is an argument that YRC intends to make and intended to make when it filed its original petition. Moreover, the assertion in the press release (**Exhibit E**) that AIM issued millions of shares of stock to Glatt, also a defendant in this case, because he was a Magla shareholder, demonstrates AIM's ownership by the Magla shareholder whom YRC claims in its Second Amended Petition is liable for damages under Kansas' Fraudulent Transfer Act (See Document 1-2, Second Amended Petition, p.9-10).

Both AIM and Glatt are justifiably listed as defendants in all counts of the Second Amended Petition, including in Count IV for piercing the corporate veil. At a minimum,

there is a possibility of establishing causes of action against AIM, either in its own right, as a successor to Magla, as the recipient of a fraudulent transfer, or on a piercing the corporate veil theory. YRC has properly pled those causes of action. "To defeat [a] motion to remand, it is incumbent upon defendants to show that there is no possibility that plaintiffs would be able to establish a cause of action against [the defendant alleged to have been fraudulently joined] in state court." Cooper v. Zimmer Holdings, Inc., 320 F.Supp.2d 1154, 1157 (D.Kan. 2004). Defendant Glatt cannot show this.

Moreover, the Notice of Removal provides no evidence to justify its allegation that AIM was fraudulently joined. "[F]raudulent joinder . . . must be pleaded with sufficient certainty to justify the conclusion that the joinder was a fraudulent device to prevent removal. A mere allegation of fraudulent joinder is not sufficient." Updike v. West, 172 F.2d 663, 665 (10th Cir. 1949). Glatt tries to support his allegation with three statements, neither of which justifies the conclusion that including AIM as a defendant was a fraudulent device to prevent removal. First, he asserts that "Plaintiff makes no individualized factual allegations to support its claims against Ads in Motion. Rather, Plaintiff groups all of the defendants together as 'Magla Defendants.'" (Document 1, Notice of Removal, ¶18). It is true that in its Second Amended Petition YRC grouped several defendants together, including AIM, and referred to them, for the sake of convenience, as "Magla Defendants." AIM was included with the other corporate defendants because its finances appear to be so intricately intertwined with those of the other corporate defendants as to effectively constitute one and the same company. In any event, YRC is not required to go into great detail about the companies' interrelationship in the petition. YRC used the term "Magla Defendants" where the allegations it was

making applied equally to all of those defendants. It is a routine practice in all courts, state and federal, to lump parties together under a single term to avoid having to write out the name of each party repeatedly. Nothing about using that common practice in this case lessens the force of YRC's claims against each of those defendants, including AIM, or suggests in any way that AIM was fraudulently joined.

Glatt's second statement in support of its fraudulent joinder allegation is simply a restatement of how YRC described the defendants' business in its Second Amended Petition:

> "Plaintiff alleged in its petition that Magla Products, Magla Products, Inc., and Magla International, LLC are 'in the business of designing, arranging for manufacture, marketing and distributing disposable, reusable, work-related gloves and related household products.' But, Plaintiff asserts that Ads in Motion '*operates as a holding company which through its subsidiaries* designs, arranges for manufacture, markets and distributes disposable, reusable, work-related gloves and related household products.'" (Document 1, Notice of Removal, ¶19; citations omitted; italics in original).

That is it. Glatt draws no conclusions from those excerpts quoted from the Second Amended Petition. In fact, there are no conclusions that can be drawn in support of Glatt's allegation, because nothing about how YRC has described AIM's business or the business of the other corporate defendants suggests that AIM was fraudulently joined. On the contrary, the description of AIM as a holding company for the other defendants lends support to YRC's theories that AIM may have successor liability for those defendants' actions and that AIM, like Glatt, may be liable for fraudulent transfer or on a theory of piercing the corporate veil.

Glatt's only other statement in support of its fraudulent joinder allegation is in ¶20 of the Notice of Removal: "Plaintiff does not allege any dealings with Ads in Motion. Plaintiff's statement of account, attached to the Petition as Exhibit A, does not show that

Ads in Motion owes anything. The statement of account refers only to Magla Products Inc." It is not true that YRC did not allege any dealings with AIM. The allegations in every count of the Second Amended Petition apply to the "Magla Defendants," which includes AIM (see Document 1-2, ¶7). As noted above, YRC used the common practice of including multiple parties under one term for the sake of convenience. As for YRC's statement of account, Glatt correctly notes that it refers only to Magla Products Inc. and not to AIM. That fact is in no way evidence of fraudulent joinder. The statement of account is an internal YRC document, and only one of many indicative of the contractual relationship between itself and the defendants. Other relevant documents include bills of lading, delivery receipts, tariffs, etc. Moreover, AIM's name does not have to appear on *any* document for there to be a legitimate claim against it for breach of contract, much less for any other count, especially if AIM's liability eventually proves to stem from its succession to another defendant's obligations or as a result of fraudulent transfer or piercing the corporate veil. Certainly nothing in ¶20 of the Notice of Removal suggests that AIM was fraudulently joined to defeat diversity.

In short, Glatt offers no support whatsoever for his allegation that AIM was fraudulently joined to defeat removal, as he is required to do. That is because no support exists for that allegation. AIM was included as a defendant because YRC has legitimate claims against AIM, which YRC has properly pled. Because AIM is a legitimate defendant with the same state of citizenship as YRC, complete diversity does not exist pursuant to 28 U.S.C. §1332, and this Court does not have subject matter jurisdiction over the action. This case should therefore be remanded to state court.

***b. The Notice of Removal and Consent are procedurally defective because they were not timely filed pursuant to 28 U.S.C. §1446(b).***

The Notice of Removal and Consent are procedurally defective because they were not timely filed pursuant to 28 U.S.C. §1446(b). In relevant part, 28 U.S.C. §1446(b) reads as follows: "The notice of removal . . . shall be filed within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based." 28 U.S.C. §1446(b)(1). "[A]ll defendants who have been properly joined and served must join in or consent to the removal of the action." 28 U.S.C. 1146(b)(2)(A). "Each defendant shall have 30 days after receipt by or service on that defendant of the initial pleading or summons . . . to file the notice of removal." 28 U.S.C. 1146(b)(2)(B).

The thirty-day time limitation of §1446(b) is not a jurisdictional requirement, but rather a strictly enforced procedural requirement. McShares, Inc. v. Barry, 979 F.Supp.1338, 1343 (D.Kan. 1997). Federal courts disagree about when the 30-day time limit begins. The minority have adopted the "last-served defendant rule," which starts the 30-day period running when the last defendant is served. *See e.g.,* Barbour v. Internat'l Union, 594 F.3d 315, 322 (4th Cir. 2010); Brierly v. Alusuisse Flexible Packaging, Inc., 184 F.3d 527, 533 (6th Cir. 1999). By contrast, the majority rule, known as the "first-served defendant rule," begins the 30-day limit when the first-served defendant is served. *See e.g.,* Getty Oil Corp., a Div. of Texaco, Inc. v. Insurance Co. of North America, 841 F.2d 1254, 1262-63 (5th Cir. 1988); McShares, Inc., 979 F.Supp. at 1343, FN2 ("[T]he majority of published decisions have found that in multi-defendant actions, the thirty-day period for removal commences for all defendants when service is accomplished on the

first-served defendant" (*quoting* Ford v. New United Motors Mfg., Inc., 857 F.Supp. 707, 709 (N.D.Cal. 1994)).

Federal district courts in Kansas follow the majority rule. Id. "Where there are multiple defendants the thirty-day period commences when service is obtained on the first-served defendant." Id. "[I]f the thirty-day period expires without removal, a defendant served subsequent to the thirty-day period may not remove the action even with the consent of the defendants served earlier. If the original action could have been removed, amended claims or additional defendants do not create another opportunity for removal." Henderson v. Holmes, 920 F.Supp. 1184, 1188 (D.Kan. 1996) (citations omitted).

In this case, the defendants were served on the following dates:

| | |
|---|---|
| Magla Products, LLC d/ba Magla Finished Goods Warehouse | September 7, 2011 |
| Magla International, LLC | September 7, 2011 |
| Ads in Motion, Inc. | October 10, 2011 |
| Magla Products, Inc. | November 3, 2011 |
| Jordan Glatt | February 24, 2012 |
| Magla Worldwide, Ltd. | March 8, 2012 |

(See Statement of Facts, above, ¶¶ 2-4). The first-served defendants were served on September 7, 2011. Therefore, under the rule followed by the federal district courts of Kansas, the 30-day period set forth in 28 U.S.C. §1446(b) began on September 7, and any filing or consent to a notice of removal filed more than 30 days after September 7—i.e., after October 7, 2011—is not timely. The Notice of Removal was filed by Glatt and consented to by the other defendants in the same filing on March 26, 2012, well past the

30-day limit. Where a notice of removal is not timely or any of the co-defendants have not timely filed consents to removal, the case must be remanded. McShares, Inc., 979 F.Supp. at 1344 ("Since the defendant[s] . . . have not shown that their notice of removal was timely filed or that any of the co-defendants timely filed their consents to removal, the court finds that the removal is procedurally defective and the case must be remanded.").

At first blush, this outcome may seem unfair to defendants like Glatt, who are added more than 30 days after the original defendants have been served, because later-added defendants like Glatt have no opportunity to file for removal where the original defendants failed to do so. But on closer examination, that outcome is consistent with the requirement that all defendants approve of the removal. The original defendants had every opportunity in the first 30 days after they were served to file a notice of removal if they so chose. The reason they did not is either that they did not want the case removed or that they neglected to do so. So be it—but by failing to file within 30 days of being served, they waived their opportunity to file for or consent to removal later. Had they timely filed a notice of removal, Glatt could have filed one also within 30 days of when he was served, and the case might have satisfied the requirements of §1446(b) (although removal still would have failed for lack of subject matter jurisdiction and other procedural flaws discussed herein). Having failed to do so, however, the original defendants waived removal by their inaction. They did not demonstrate their consent to removal within the time period required by §1446(b). As this Court has held,

> "As a general rule, if the first served defendant abstains from seeking removal or does not effect a timely removal, subsequently served defendants cannot remove due to the rule of unanimity among defendants which is required for removal. . . The argued unfairness of denying the opportunity to remove to a subsequently

> served defendant is simply the operation of the unanimity requirement. . . This general rule is in step with other doctrines of removal jurisdiction: (1) a defendant seeking removal must strictly comply with statutory requirements; (2) in a multiple-defendant case, the petition must show each defendant is eligible for removal; (3) the burden of showing the propriety of removal always rests with the removing party; and (4) any substantial doubts as to statutory compliance for removal should result in remand." W.C. Cohen v. Hoard, 696 F.Supp. 564, 566 (D.Kan. 1988).

Therefore, although Glatt may have filed the Notice of Removal within 30 days of when *he* was served, the proper starting point for the 30-day time period is when the first-served defendant was served, even though Glatt was added later. In federal district courts in Kansas, the law is unequivocal on this point. Because the Notice of Removal and attached Consent were not timely filed pursuant to 28 U.S.C. §1446(b), this case must be remanded.

***c. The Notice of Removal did not satisfy the procedural requirements of 28 U.S.C. §1446(a) because not all required documents were included.***

The Notice of Removal does not satisfy the procedural requirements for removal of civil actions because it did not include all documents required by 28 U.S.C. §1446(a). Because Congress has chosen to limit the scope of jurisdiction of the federal district courts, the Court is required to strictly construe the removal statute, 28 U.S.C. §1446. Durand v. The Hartford Life and Acc., Ins. Co., 2007 WL 1395336, at *1 (D.Colo.). A strict reading of §1446(a) requires "A defendant or defendants desiring to remove" to file a notice of removal containing "a copy of all process, pleadings, and orders served upon such defendant or defendants in such action." 28 U.S.C. §1446(a). The Notice of Removal fails to include a copy of all process served upon Glatt and other defendants desiring removal as required by 28 U.S.C. §1446(a) because it fails to include the Summons and the Notice of Case Management Conference served upon Glatt on

February 24 along with the Second Amended Petition. (See **Exhibit C**, Affidavit of Service; also included in Document 8-1, State Court Records). The Notice of Removal also fails to include a copy of all process served upon the other defendants desiring removal—i.e., those defendants who signed the Consent—because it fails to include the original petition, the amended petition, and the summonses served on every one of those defendants (see **Exhibits A, B and C**, Affidavits of Service and Returns of Service; also included in Document 8-1, State Court Records, and Document 13, Return of Service of Summons Executed), as well as any Requests for Service served on them. Together, then, at least *nine* documents that are required to be included with the Notice of Removal by the clear language of 28 U.S.C. §1446(a) (one summons for each of the six defendants, plus the original petition, the amended petition and the Notice of Case Management Conference) were not included.

A district court has discretion to determine whether remand is warranted where the removing defendant fails to include all of the documents required by §1446(a) in its notice of removal. Yellow Transp., Inc. v. Apex Digital, Inc., 406 F.Supp.2d 1213, 1219 (D.Kan. 2005). In the 10th Circuit, district courts have exercised that discretion to remand cases to state court merely on the basis of a removing defendant's failure to include even a single summons or court order served on the defendants. *See e.g.*, Durand, *supra*; Kinateder v. American Family Mut. Ins. Co. of Wisconsin, 2009 WL 539668, at *2 (D.Colo.) ("the language of the statute plainly requires that all process be included with the notice of removal. All means all, not almost."). In this case, where at least nine documents required in the Notice of Removal were omitted, remand is even more justified. Because the removal statute is strictly construed and the Notice of Removal

fails to include all process served on the defendants desiring removal as required by 28 U.S.C. §1446(a), this case should be remanded to state court.

3. **YRC Requests Its Just Costs and Actual Expenses, Including Attorney Fees, Pursuant to 28 U.S.C. § 1447(c).**

YRC requests its just costs and actual expenses, including attorney fees, incurred as a result of Glatt's removal. "An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). "[T]he award of attorney's fees rests squarely within the discretion of the district court when a remand is ordered." Martin v. Franklin Capital Corp., 393 F.3d 1143, 1146 (10th Cir. 2004). "In deciding whether to award costs under §1447(c), the key factor is the propriety of defendant's removal. The district court does not have to find that the state court action has been removed in bad faith as a prerequisite for awarding attorney's fees and costs." Id.

In the 10th Circuit, a lack of subject matter jurisdiction has been held sufficient to warrant an award of attorney fees. (*See e.g.*, Topeka Housing Authority v. Johnson, 404 F.3d 1245, 1248 (10th Cir. 2005) ("We agree with the district court there was not federal jurisdiction to hear THA's original complaint. It presented no federal cause of action, nor was there diversity of citizenship. Removal was therefore improper, and the district court could exercise its discretion to assess reasonable costs and fees.") Removal was improper in this case because this Court clearly lacks original jurisdiction, as Glatt was well aware when he filed the Notice of Removal. No federal question is involved, and the parties are not completely diverse. Glatt does not dispute that the parties are not completely diverse, and his assertion that AIM was fraudulently joined to defeat diversity is unsupported and

unsupportable. As argued above, AIM and Magla were publicly holding themselves out as one and the same entity, were occupying the same building, were under the same management, and shares of one were given to the shareholders of the other in a reverse merger. Together, these facts provide a strong basis for claims against AIM on theories of successor liability, piercing the corporate veil, and/or fraudulent transfer. Claiming fraudulent joinder as the only way to assert diversity jurisdiction is an improper overreach where the facts, as well as a Magla press release and AIM's SEC filing, clearly demonstrate plausible causes of action against AIM as pled. As president of all the corporate defendants, Glatt was well aware of these facts. An award of attorney fees is therefore warranted.

Untimeliness of removal may also be the basis for an award of attorney fees. (*See e.g.*, Garrett v. Cook, 652 F.3d 1249, 1254 (10th Cir. 2011) ("A defendant's untimeliness in filing his notice of removal is precisely the type of removal defect contemplated by §1447(c). If objectively unreasonable, an untimely removal may give rise to an award of fees and costs under §1447(c)" (citations omitted)). In this case, the Notice of Removal was clearly untimely under 28 U.S.C. §1446(b) as interpreted by the Kansas district courts and was therefore objectively unreasonable. An award of attorney fees is justified on that basis alone.

Damages claimed by YRC in this case are over a quarter of a million dollars. YRC has now had to spend thousands of additional dollars responding to a Notice of Removal that has no merit on its face. For that reason, and those stated above, the Notice of Removal was objectively unreasonable, and an award of YRC's attorney fees is justified under 28 U.S.C. §1447(c).

## CONCLUSION

Because this court does not have subject matter jurisdiction over this action, and because the Notice of Removal was not timely and was otherwise procedurally defective, this action should be remanded to the District Court of Johnson County, Kansas where it originated (case no. 11cv06905), and plaintiff YRC Inc. should be awarded its just costs and expenses, including attorney fees incurred as a result of the Notice of Removal.

Respectfully submitted,

**SHAPIRO & MCMULLEN, P.A.**

By: /s/ Corey Mertes
Corey Mertes, KS 22903
Tony Shapiro, KS 17965
11460 Tomahawk Creek Parkway
Suite 310
Leawood, KS 66211
(913) 491-1120 – phone
(913) 491-1122 – fax
**Attorneys for Plaintiff**

**CERTIFICATE OF SERVICE**

I hereby certify that on April 24, 2012, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which sent notification of such filing to the following:

Mark M. Iba
Misty D. Watt
1201 Walnut Street
Kansas City, Missouri 64106-2150
miba@stinson.com
mwatt@stinson.com

ATTORNEYS FOR DEFENDANT
JORDAN GLATT

/s/ Corey Mertes
Attorney for Plaintiff YRC, Inc.