IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF KANSAS

YRC, INC.,

        Plaintiff,

Vs.                                  No.  12-2179-SAC

MAGLA PRODUCTS, L.L.C. d/b/a
MAGLA FINISHED GOODS
WAREHOUSE; MAGLA PRODUCTS,
INC.; MAGLA INTERNATIONAL, LLC;
MAGLA WORLDWIDE, LTD.; ADS IN
MOTION, INC.; JORDAN GLATT,

        Defendants.

MEMORANDUM AND ORDER

      The case comes before the court on the plaintiff YRC Inc.'s ("YRC's") motion to remand this case to the state District Court of Johnson County, Kansas, from which it was removed.  (Dk. 18).  The asserted grounds for remand are lack of subject matter jurisdiction, untimely notice of removal, and failure to supply the required documentation with the notice of removal.  Because the removing defendant has not carried its burden of proving fraudulent joinder, the case is remanded for lack of subject matter jurisdiction.

      YRC filed this action in state court seeking to recover approximately $275,000 in billings for the freight hauling services provided by contract with the "Magla defendants" for their benefit or at their request

from October 2010 through May 2011.  (Dk. 1-2, ¶ 14).  The original and first amended petitions were against only the four affiliated corporate defendants,[1] but the second amended petition added as defendants, Magla Worldwide, Ltd. and Jordan Glatt, the president and/or chief executive officer for each affiliated corporate defendant, as well as claims for fraudulent transfer and piercing the corporate veil.  YRC offers that these amendments were due to discovering evidence that Jordan Glatt, as a corporate officer, "had been diverting corporate funds to family members during the relevant period." (Dk. 19, p. 2).  YRC's second-amended petition refers to the corporate defendants as one group, "Magla Defendants."  It brings against all defendants the following five counts:  count one--breach of contract, count two--action on account, count three--fraudulent transfer, count four--piercing the corporate veil, and count five--quantum meruit/unjust enrichment.  (Dk. 1-2).

       Jordan Glatt has filed a notice of removal alleging that this court has diversity jurisdiction and that the procedural requirements for removal are met.  To assert complete diversity between the plaintiff and all proper defendants in this action, Glatt alleges as to the defendant, Ads in Motion,

---

[1]YRC explains that it filed the first amended petition in state court to correct that the defendant Ads in Motion, Inc. was incorporated in Delaware instead of New Jersey.  Thus, YRC had named Ads in Motion, Inc. as a party defendant in this action even before learning that it was a non-diverse defendant.

Inc., ("AIM") which was incorporated in Delaware as was the plaintiff YRC,[2] that AIM "was fraudulently joined to the action for the sole purpose of destroying diversity." (Dk. 1, ¶ 17). For his proof, Glatt points to the lack of "individualized factual allegations" against AIM and to the petition's grouping of all "the defendants together as 'Magla Defendants,'" *id.* at ¶ 18, and to the lack of allegations of any dealings with or accounts showing billings between YRC and AIM, *id.* at ¶ 20. Finally, Glatt's notice emphasizes how the petition distinguishes three of the Magla Defendants as "in the business of designing, arranging for manufacture, marketing and distributing disposable, reusable, work-related gloves and related household products," while it alleges that AIM only "operates as a holding company" and that its subsidiaries engage in this business. *Id.* at ¶ 19.

For federal diversity jurisdiction to exist, "the matter in controversy" must exceed $75,000, and the action must be "between . . . citizens of different States." 28 U.S.C. § 1332(a). "Defendants may remove an action on the basis of diversity of citizenship if there is complete diversity between all named plaintiffs and all named defendants, and no defendant is a citizen of the forum State." *Lincoln Property Co. v. Roche*, 546 U.S. 81, 84

---

[2]"[A] corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business." 28 U.S.C. § 1332(c)(1). As the state petition alleges, the plaintiff YRC and the defendant Ads in Motion were incorporated in Delaware. (Dk. 1-2, pp. 2-3).

(2005). The removing defendant has "the burden of establishing that the requirements for the exercise of diversity jurisdiction are present." *Martin v. Franklin Capital Corp.*, 251 F.3d 1284, 1290 (10th Cir. 2001) (citation omitted). "It is well-established that statutes conferring jurisdiction upon the federal courts, and particularly removal statutes, are to be narrowly construed in light of our constitutional role as limited tribunals." *Pritchett v. Office Depot, Inc.*, 420 F.3d 1090, 1095 (10th Cir. 2005) (citations omitted). "All doubts are to be resolved against removal." *Fajen v. Found. Reserve Inc. Co.*, 683 F.2d 331, 333 (10th Cir. 1982)

A defendant's "right of removal cannot be defeated by a fraudulent joinder of a resident defendant having no real connection with the controversy." *Wilson v. Republic Iron & Steel Co.*, 257 U.S. 92, 97 (1921).[3] "When a plaintiff names a non-diverse defendant solely in order to defeat federal diversity jurisdiction, the district court must ignore the presence of the non-diverse defendant and deny any motion to remand the matter back to state court." *Henderson v. Washington Nat. Ins. Co.*, 454 F.3d 1278, 1281 (11th Cir. 2006). "[A] fraudulent joinder analysis [is] a jurisdictional inquiry." *Albert v. Smith's Food & Drug Centers, Inc.*, 356 F.3d 1242, 1247

---

[3]Fraudulent joinder "is a term of art" used when a non-diverse or resident defendant is not considered in determining diversity jurisdiction because "the plaintiff fails to state a cause of action against a resident defendant, and the failure is obvious according to the settled rules of the state." *Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1067 (9th Cir. 2001) (internal quotation marks and citation omitted).

4

(10th Cir. 2004). Because claims of fraudulent joinder challenge the pleadings, the courts are "to 'pierce the pleadings, consider the entire record, and determine the basis of joinder by any means available.'" *Nerad v. AstraZeneca Pharmaceuticals, Inc.*, 203 Fed. Appx. 911, 913 (10th Cir. 2006) (quoting *Dodd v. Fawcett Publ'ns, Inc.*, 329 F.2d 82, 93 (10th Cir. 1964)); *see Bio-Tec Environmental LLC v. Adams*, 792 F. Supp. 2d 1208, 1214 (D.N.M. 2011).

The removing defendant asserting fraudulent joinder bears "a heavy burden" of proof:

> "To prove their allegation of fraudulent joinder [the removing parties] must demonstrate that there is no possibility that [plaintiff] would be able to establish a cause of action against [the joined party] in state court. In evaluating fraudulent joinder claims, we must initially resolve all disputed questions of fact and all ambiguities in the controlling law in favor of the non-removing party. We are then to determine whether that party has any possibility of recovery against the party whose joinder is questioned."

*Montano v. Allstate Indemnity*, 211 F.3d 1278 at *1-*2, 2000 WL 525592 (10th Cir. Apr. 14, 2000) (unpub.) (quoting *Hart v. Bayer Corp.*, 199 F.3d 239, 246 (5th Cir. 2000). The Tenth Circuit in *Montano* further observed:

> This standard is more exacting than that for dismissing a claim under Fed. R. Civ. P. 12(b)(6); indeed, the latter entails the kind of merits determination that, absent fraudulent joinder, should be left to the state court where the action was commenced. *See Batoff v. State Farm Ins. Co.*, 977 F.2d 848, 851-53 (3d Cir. 1992) ("A claim which can be dismissed only after an intricate analysis of state law is not so wholly insubstantial and frivolous that it may be disregarded for purposes of diversity jurisdiction."). Finally, as the reference to "a cause of action" in the quoted passage reflects, remand is required if

any one of the claims against the non-diverse defendant, . . ., is possibly viable. *See Green v. Amerada Hess Corp.*, 707 F.2d 201, 207 (5th Cir. 1983) ("Even if [plaintiff] were [precluded] from pursuing all his claims save one in state court, a remand would be necessary.").

*Id.*; *see Flores-Gaytan v. 3M Company*, 2011 WL 133037 at *1-*2 (D. Kan. Jan. 14, 2011); *cf. Nerad v. AstraZeneca Pharms., Inc.*, 203 Fed. Appx. at 913 ("a reasonable basis to believe the plaintiff might succeed in at least one claim against the non-diverse defendant," that is, the plaintiff's claim "need not be a sure-thing, but it must have a basis in the alleged facts and the applicable law"); *Archuleta v. Taos Living Center, LLC*, 791 F. Supp. 2d 1066, 1072-73 (D.N.M. 2011) (observed the different language in *Montano* and *Nerad* as an inconsistency also identified and resolved in Fifth Circuit precedent by *Smallwood v. Ill. Cent. R.R. Co.*, 385 F.3d 568, 573 (5th Cir. 2004), *cert. denied*, 544 U.S. 992 (2005), through treating the language as equivalent and as best stated that the defendant has the burden of demonstrating "that there is no possibility that the plaintiff would be able to establish a cause of action against the party alleged to be fraudulently joined." (citations omitted)).[4]  Not unlike the proof needed for a claim of

---

[4]The Tenth Circuit's last published decision on the burden of proof in fraudulent joinder cases observed:  "The joinder of a resident defendant against whom no cause of action is stated is patent sham, . . ., and though a cause of action be stated, the joinder is similarly fraudulent if in fact no cause of action exists, . . . .  This does not mean that the federal court will pre-try, as a matter of course, doubtful issues of fact to determine removability, the issue must be capable of summary determination and be proven with complete certainty." *Smoot v. Chicago, R.I. & P.R. Co.*, 378 F.2d 879, 882 (10th Cir. 1967).

6

fraud, the removing party must allege fraudulent joinder with particularity and prove it with certainty. *McLeod v. Cities Service Gas* Company, 233 F.2d 242, 246 (10th Cir. 1956); *Bio-Tec Environmental, LLC v. Adams*, 792 F. Supp. 2d at 1219; *see Wolf Creek Nuclear Operating Corp. v. Framatome ANP, Inc.*, 416 F. Supp. 2d 1081, 1085 (D. Kan. 2006).

As quoted above, a court begins evaluating a fraudulent joinder claim with initially resolving all disputed questions of fact and all ambiguities in the controlling state law in favor of the non-removing party. *Montano v. Allstate Indemnity*, 211 F.3d 1278 at *1-*2. It then determines whether the plaintiff has any possibility of recovering against the non-diverse defendant. The relevant issues must be capable of summary determination and proven with complete certainty. *Smoot v. Chicago, R.I. & P. R. Co.*, 378 F.2d 879, 882 (10th Cir. 1967). In short, "[t]he removing party must 'prove the non-liability of the [non-diverse] defendant as a matter of fact or law.' *Blackwood v. Thomas*, 855 F. Supp. 1205, 1207 (D. Colo. 1994)." *Oshima v. Kia Motors Corp.*, 2012 WL 1578397 at *1 (D. Colo. May 4, 2012).

In moving for remand, YRC argues that it named AIM as a defendant because "during the relevant period AIM was so intricately related to the other corporate defendants as to be virtually indistinguishable from them" and because "one of the diverse defendants, Magla Products, LLC, completed a reverse merger with AIM by which AIM continued the business

7

of Magla." (Dk. 19, p. 6). In support of its state court motion for leave to file its second amended petition, YRC says it attached as an exhibit, the press release dated February 20, 2011, that announced this merger between Magla Products, LLC and AIM. This same press release is now attached to YRC's memorandum in support of its motion to remand, and it states in pertinent part:

> Magla Products, LLC, . . . today announced the successful completion of a reverse merger (the "Merger") with Ads in Motion, Inc. ("AIM"), Company with no current operations. AIM, now headquartered in Magla's Morristown facility, will continue the business of Magla products as a wholly-owned subsidiary under the leadership of the current management team, headed by Chairman and Chief Executive Officer, Jordan Glatt.
> In completing the Merger, AIM issued approximately 13.45 million shares of its common stock to the holders of Magla common stock, principally Mr. Glatt. The merged company was quoted on the OTCBB market under the symbol "ADSO," beginning on February 8, 2011.

(Dk. 19-5, p. 1). As YRC rightly observes from this press release, Magla Products, LLC and AIM were publicly holding themselves out as a "merged company" having the same physical facilities and same management team. These circumstances, according to YRC, provide a strong argument for AIM's "successor liability" for Magla Products, LLC's obligations. (Dk. 19, p. 7). Additionally, the press release shows Glatt's ownership of AIM. Thus, YRC contends "there is a possibility of establishing causes of action against AIM, either in its own right, as a successor to Magla, as the recipient of a fraudulent transfer, or on a piercing the corporate veil theory." (Dk. 19, p.

8

8).  Finally, YRC challenges Glatt's notice of removal as nothing more than bare allegations and conclusory arguments that do not establish fraudulent joinder.

Glatt argues that the YRC's pleading practice of grouping the defendants "indicates a lack of connection to the specific [non-diverse] defendant and constitutes grounds for finding the defendant was fraudulently joined." (Dk. 20, p. 2).  As noted below, Glatt cites no authority that directly supports this unique argument.[5]  Glatt next points to YRC's failure to allege that AIM had a contractual relationship with or established an account with YRC, and on that point, Glatt avers that AIM "has never entered into any contractual relationship with YRC, Inc. to haul freight for any Magla entity." (Dk. 20-1, ¶ 2).  Glatt further avers that the reverse merger in February 2011 resulted in AIM becoming "the sole member of

---

[5] Glatt cites no direct legal authority for this proposition, and the case law cited does not emphasize the pleading practice as a ground by itself for finding fraudulent joinder.  Rather, the court there found that the complaint failed to allege how the individual sales representatives of a drug manufacturer "proximately caused plaintiffs' [personal] injuries" and failed to make any "specific allegations against [sales representative] . . . instead attribut[ed] wrongdoing to the collective 'defendants'." *In re Rezulin Products Liability Litigation*, 168 F. Supp. 2d 136, 140 (S.D.N.Y. 2001).  Additionally, the defendant sales representative "submitted an affidavit in which he denies that he sold or took orders for Rezulin, marketed or advertised Rezulin to the general public, or had any direct dealings with plaintiffs." *Id.*  Moreover, the "[p]laintiffs . . . [did] not submit[] any evidence undermining defendants' position." *Id.*  A better reading of *Rezulin* is that a court is not to rely blindly on a plaintiff's use of this pleading device but pierce the allegations based on the evidence presented and facts as known.

Magla International LLC" and that "[p]rior to February 2011, AIM had no affiliation with any Magla entity." *Id.* at ¶ 3. Glatt contends AIM is not a proper party to the fraudulent transfer count, as AIM cannot be a debtor because it has no relevant contractual relationship and was not involved with a Magla entity during the period of the alleged fraudulent transfers. On YRC's count for piercing the corporate veil, Glatt finds no allegation that is related to AIM or its subsidiary and that the alleged fund transfers predate AIM's relationship with the Magla subsidiary. Finally, Glatt rejects YRC's claim of successor liability against AIM as conclusory and unsupported by factual allegations that AIM assumed or succeeded to any liabilities of its subsidiary. Glatt denies that AIM is a successor to Magla or that AIM is "the surviving entity of a 'merged company.'" (Dk. 20, pp. 4-5).

In reply, YRC justifies its group-pleading of the "Magla defendants" because all the defendants, except for Magla Worldwide, Ltd., are engaged in the same business, are "located in the same place, and are run by the same man." (Dk. 21, p. 3). YRC insists the allegations to establish its claims against Magla Products, LLC are the same ones necessary for its claims against AIM, since they are effectively the same company. Relying on Glatt's declaration, the press release of February 20, 2011, and AIM's 10-Q filing for the quarter ending February 26, 2011, YRC asserts that in the reverse merger AIM became the sole owner of Magla

10

International, LLC, which was the wholly-owned subsidiary of Magla Products, LLC, through which Magla Products conducted its business.  YRC now contends that Magla Products essentially transferred "its business to a shell company, AIM," that resulted in a merged company.  *Id*. at p. 4.  Notwithstanding Glatt's averment that AIM did not acquire, assume, or obtain any assets or liabilities for any Magla entity in the reverse merger, YRC argues this does not cut off AIM's successor liability if a purpose of the reverse merger was to avoid  liabilities.  YRC concludes it has come forward with sufficient facts for AIM's possible liability as a successor or under the other pleaded theories.

        Glatt has not carried his burden of showing that YRC has no possibility of establishing a cause of action against AIM.  The evidence of record indicates a factual and legal possibility of YRC proving that AIM is directly liable for shipping fees incurred after the reverse merger and that AIM is liable as a successor for fees incurred before the merger.  According to AIM's Form 10-Q filed with the SEC for the quarter ending February 26, 2011, Magla Products, LLC, before the reverse merger, had been "the company through which the business was operated," but there was a reorganization that occurred "immediately prior to" the reverse merger. (Dk. 19-4, p. 11).  Under the reorganization agreement, Magla Products, LLC contributed some operating assets to Magla International, LLC, and the latter

corporation assumed some of Magla Products' liabilities. *Id*. With the reverse merger, AIM acquired Magla International, LLC, as its "wholly owned subsidiary." *Id.* The Form 10-Q describes this as a "consolidation effected by the business combination." *Id.* at p. 10. The press release further explains that Magla International, LLC had been wholly owned by Magla Products but with the reverse merger "AIM, now headquartered in Magla's Morristown facility, will continue the business of Magla products as a wholly-owned subsidiary under the leadership of the current management team." (Dk. 19-5, p. 1). These documents are some evidentiary support for YRC's position that AIM "became the sole owner of a wholly-owned subsidiary of Magla Products" and "took over the role of Magla Products." (Dk. 21, p. 3). These documents arguably support a claim that because of the merger AIM is "continu[ing] the business of Magla products," is the sole owner of a corporation that assumed certain liabilities of Magla Products, and is managed now by the same leadership of Magla Products.

The general rule of successor corporate liability in Kansas is stated as follows:

> "Generally where one corporation sells or otherwise transfers all of its assets to another corporation, the latter is not liable for the debts and liabilities of the transferor, except: (1) where the purchaser expressly or impliedly agrees to assume such debts; (2) where the transaction amounts to a consolidation or merger of the corporation; (3) where the purchasing corporation is merely a continuation of the selling corporation; and (4) where the transaction is entered into fraudulently in order to escape liability for such debts."

*Comstock v. Great Lakes Distributing Co.*, 209 Kan. 306, 310, 496 P.2d 1308 (1972) (quoting 15 *Fletcher Cyclopedia of the Law of Private Corporations* § 7122 (perm. ed)). Established Kansas law also recognizes that one corporation can be the alter ego of another corporation:

> The fiction of separate corporate identities of two corporations will not be extended to permit one of the corporations to evade its just obligations; to promote fraud, illegality, or injustice; or to defend crime. Under circumstances where the corporate entity is disregarded, the parent corporation may be held liable for the acts of the subsidiary. The mere fact, however, that a subsidiary corporation was organized for the avowed purpose of avoiding liability on the part of the holding company does not, of itself, constitute fraud justifying disregard of the corporate entity of the subsidiary. The courts will disregard the fiction of a separate legal entity when there is such domination of finances, policy, and practices that the controlled corporation has no separate mind, will, or existence of its own and is but a business conduit for its principal.

*Dean Operations, Inc. v. One Seventy Assocs.*, 257 Kan. 676, 681, 896 P.2d 1012 (1995); *see Ice Corp. v. Hamilton Sundstrand Inc.*, 444 F. Supp. 2d 1165, 1169-70 (D. Kan. 2006) ("The ultimate test for imposing alter ego status is whether, from all of the facts and circumstances, it is apparent that the relationship between the parent and subsidiary is so intimate, the parent's control over the subsidiary is so dominating, and the business and assets of the two are so mingled that recognition of the subsidiary as a distinct entity would result in an injustice to third parties." (citation omitted)). Resolving all doubts, disputes and ambiguities in the evidence in favor of YRC, the court finds that Glatt has not proved with certainty that

YRC could not possibly recover from AIM under either of these legal theories on the facts as alleged and presented above.  Put simply, Glatt has not proved the non-liability of AIM as a matter of fact or law.  Thus, AIM's inclusion as a defendant did not constitute a fraudulent joinder and, its non-diverse status bars removal to federal court.

YRC asks for the remand order to require Glatt's payment of YRC's just costs and actual expenses, including attorney fees, pursuant to 28 U.S.C. § 1447(c).  YRC argues that Glatt's removal was improper as subject matter jurisdiction here was clearly lacking and his allegations of fraudulent joinder were not only unsupported but contradicted by such public records that provided a strong factual basis for the claims of successor liability and piercing the corporate veil.  Glatt opposes any award of costs and expenses as the propriety of removal jurisdiction was certainly a justiciable issue.

The United States Supreme Court in 2005 discussed the legislative intent behind this fee-shifting provision and settled on the applicable standard:

> Congress, however, would not have enacted § 1447(c) if its only concern were avoiding deterrence of proper removals.  Instead, Congress thought fee shifting appropriate in some cases. The process of removing a case to federal court and then having it remanded back to state court delays resolution of the case, imposes additional costs on both parties, and wastes judicial resources. Assessing costs and fees on remand reduces the attractiveness of removal as method of delaying litigation and imposing costs on the plaintiff. The appropriate test for awarding fees under § 1447(c) should recognize the desire to deter removals sought for the purpose of prolonging litigation and

> imposing costs on the opposing party while not undermining Congress' basic decision to afford defendants a right to remove as a general matter, when the statutory criteria are satisfied.
> In light of these "'large objectives,'" [*Flight Attendants v.*] *Zipes*, [491 U.S. 754] *supra*, at 759 [(1989)], the standard for awarding fees should turn on the reasonableness of the removal. Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal. Conversely, when an objectively reasonable basis exists, fees should be denied. (citations omitted).

*Martin v. Franklin Capital Corp.*, 546 U.S. 132, 140-41 (2005). This case presents a close question. There is no question but that YRC has evidence establishing possible liability against AIM, yet it did not allege any of these circumstances in its petitions. Glatt's notice of removal offered no more than a conclusory assertion of fraudulent joinder relying almost exclusively on vague allegations against AIM found in YRC's petition. While Glatt should have been aware of his heavy burden in proving fraudulent joinder, YRC's vague allegations made it objectively reasonable for him to question whether YRC was pursuing any actionable claim of individual liability against AIM or simply had dumped AIM into the group of "possible" Magla defendants. On these facts, the court in the exercise of its reasonable discretion declines to award costs and expenses to the plaintiff under 28 U.S.C. § 1447(c).

IT IS THEREFORE ORDERED that YRC's motion to remand (Dk. 18) is granted, and this case is remanded to the District Court of Johnson County, Kansas, from which it was removed. YRC's request for costs and expenses under 28 U.S.C. § 1447(c) is denied. The Clerk of the Court shall

mail a certified copy of this remand order to the Clerk of the District Court of Johnson County, Kansas.

IT IS FURTHER ORDERED that Glatt's motion for leave to file a sur-reply (Dk. 22) to address an issue that was not discussed above is denied as moot;

IT IS FURTHER ORDERED that the court is without jurisdiction to decide Glatt's motion to dismiss (Dk. 6).

Dated this 6th day of June, 2012, Topeka, Kansas.

s/ Sam A. Crow
Sam A. Crow, U.S. District Senior Judge